# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CRYSTAL D. BOONE,

      Plaintiff,

v.                     Case No. 8:18-cv-2523-T-60TGW

PUBLIX SUPER MARKETS, INC.,

      Defendant.

_____/

## ORDER GRANTING "DEFENDANT'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW"

This matter is before the Court on "Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law," filed on November 1, 2019. (Doc. 34). Plaintiff filed a response in opposition on November 15, 2019. (Docs. 43; 44). The Court held a hearing on Defendant's motion on February 12, 2020. (Doc. 62). Upon review of the motion, response, court file, and record, the Court finds as follows:

## Background[1]

Defendant Publix Super Markets, Inc. ("Publix") hired Plaintiff Crystal D. Boone in 1999. (Docs. 35, ¶ 1; 44-1, ¶ 1). In 2014, she was promoted to Customer Service Retail Improvement Specialist ("RIS"). (Docs. 35, ¶ 5; 44-1, ¶ 3). Her job duties included traveling to retail stores to assist with customer service functions and providing customer service training in the field for grocery store managers.

---

[1] On summary judgment, the Court views the facts in the light most favorable to the nonmoving party. *See Crawford v. Carroll*, 529 F.3d 961, 964 n.1 (11th Cir. 2008).

(Doc. 35, ¶¶ 6–7).  During the time period relevant to this case, Boone's RIS work group included approximately seven people.  Boone is an African American and the other people in the work group at that time were Caucasian.  (Doc. 62).

In June 2015, Patricia Johnson, a Caucasian female, became Boone's direct supervisor.  (Docs. 35, ¶ 8; 44-1, ¶ 12).  Johnson was known as a micromanager, and many of her subordinate employees had difficulty working under her.  (Docs. 44-1, ¶ 14; 45, ¶ 14).  One RIS, a Caucasian female, drafted a letter on behalf of other RISs detailing the issues and disagreements the majority of the team had with Johnson. (Docs. 36-2, Ex. 65; 48 at 16, 20).

Throughout Johnson's first few months as supervisor, she periodically checked in with Boone regarding certain issues, such as Boone's calendar and the procedures for requesting time off and cancelling on-site training visits.  (Docs. 35, ¶¶ 32–35; 36 at 33–34).  On some occasions, Johnson interpreted Boone's responses to her comments as "unprofessional."  *See, e.g.*, (Doc. 35-2, ¶ 12).  Even so, Johnson gave Boone a higher score on her 2016 performance review than Boone had received the prior year.  (Doc. 35, ¶ 38).

In 2016, Johnson identified several deficiencies in Boone's performance related to the administrative aspects of her job, such as calendaring, communication, time management, meeting deadlines, and responding to feedback. (Docs. 35, ¶¶ 38, 41, 42, 44; 36-1, Exs. 22, 26–28, 31).  Boone's April 2017 performance review reflected a lower overall score, due in large part to lower scores in those areas.  (Doc. 36-1, Ex. 30).  Boone responded to the review by telling

Johnson she felt the review was biased, that Johnson was discriminating against Boone based on her race, and that Johnson had exhibited several character and managerial flaws. (Docs. 35, ¶ 39; 38-1; 44-1, ¶ 28). In the comments section of the review, Boone wrote that Johnson's review was a biased reflection of her contributions to the team. (Docs. 35, ¶ 50; 36-1, Ex. 30).

Throughout May and June 2017, Johnson continued to coach and criticize Boone's job performance. *See, e.g.*, (Docs. 35, ¶¶ 46, 54, 58; 35-2, ¶ 21; 36-1, Exs. 36, 37, 39; 36-2, Ex. 45). During this same time period, Johnson discussed the possibility of issuing Boone an Associate Counseling Statement ("ACS"), a reprimand designed to identify deficiencies in an employee's performance. (Docs. 35, ¶¶ 56–57; 48-1 at 61). Additionally, though Boone had no prior issues with her mileage logs, Johnson chose to investigate potential discrepancies between Boone's calendar and her mileage logs. (Doc. 35-5).

On June 30, 2017, Boone – in a meeting with Johnson and other members of Publix management – was told she would receive an ACS and was questioned about her mileage logs. (Docs. 35, ¶¶ 55, 63; 37 at 8, ¶ 18; 44-1, ¶ 6; 48-1 at 46). After satisfactorily explaining her mileage logs, Boone again accused Johnson of singling her out based on her race. (Docs. 35, ¶¶ 64, 66; 44-1, ¶¶ 45, 48).

Immediately following the June 30th meeting, Johnson and Boone got into an argument about Boone's communication and calendaring issues. (Doc. 36-2, Ex. 46). Johnson sent Boone's response to two of her supervisors, David Barth, Direct of Merchandising for the Lakeland Division, and Samuel Pero, the Director of the

Lakeland Division, informing them that she could no longer effectively manage Boone, and that the situation with Boone was negatively affecting the team as well as Johnson's personal life and health. (*Id.*).

On July 24, 2017, Boone filed a formal internal complaint of discrimination and harassment against Johnson. (Doc. 35, ¶ 70). Gina Atkin, Publix's Senior HR Investigator, was assigned to Boone's internal complaint. (*Id.*, ¶ 72). In her complaint, Boone alleged that Johnson had a "personal vendetta" against her, and that Johnson was retaliating against her due to her statements about Johnson's management style following her April 2017 evaluation. (Doc. 36-3, Ex. 66). Boone also alleged that Johnson showed "favoritism" toward team members that were "afraid to challenge right vs. wrong," and that Johnson's strong reputation within corporate leadership should be balanced by how much "her subordinates suffer from her true character flaws." (*Id.*). In addition, Boone stated that, since she was "the only member of [the] team of African descent," she believed race was a factor in Johnson's treatment of her. (*Id.*). A week later, Boone followed up with Atkin and told her she feared ending up like a former RIS, a Caucasian male, who was "run off of [the] team by [Johnson] … because of the unfair treatment he endured and the lack of support he received from [Johnson]." (*Id.*, Ex. 67).

On September 1, 2017, Atkin finalized her investigative report. (Doc. 48-1). The report stated that, although Boone made allegations of racial discrimination, the motivation for her complaints was not race but her feeling that Johnson had a vendetta against her and wanted to replace her with one of Johnson's friends. (*Id.*).

The report found that Johnson seemed to be micromanaging the entire team, not just Boone, especially regarding calendaring. (Doc. 44-1, ¶¶ 68, 70); *see, e.g.*, (Doc. 48 at 96). The report further found that Johnson's favoritism was based largely on Johnson's preference for people who do not question or challenge her authority – a fact that Boone herself pointed out before the investigation. (*Id.*). Atkin additionally found that Boone was not the only person adversely affected by Johnson's favoritism, and that Johnson was engaging in favoritism to the detriment of others throughout the unit.[2] (Doc. 48 at 86–89, 104). The report concluded there had been no violation of Publix's EEO Policy and that, in the eyes of Publix, Boone's receipt of an ACS and frequent criticism from Johnson resulted from Boone's failure to make necessary improvements in her performance and her continued defensive and argumentative tone toward Johnson, which had a negative effect on team morale. (Doc. 48-1).

Even after receiving the ACS, Boone continued, in Johnson's eyes, to exhibit the same performance issues. *See, e.g.,* (Docs. 35, ¶¶ 78–82, 87; 36-2, Exs. 51, 52; 38 at 91–92).[3] Consequently, in October 2017, Johnson discussed other potential forms of discipline for Boone with Barth. (Doc. 38 at 90). On October 30, 2017, Johnson took FMLA leave and did not return until December 8, 2017. (Doc. 35, ¶ 83).

---

[2] As previously noted, the work group supervised by Johnson consisted of just one African American person (Boone). Thus, Johnson's favoritism appears to have worked to the detriment of Caucasians as well as African Americans.

[3] There appears to be a disagreement as to the number of times Boone was coached. *See* (Doc. 44-1, ¶¶ 84, 87).

While Johnson was on leave, her team was supervised by Gary Foxworth. Foxworth and Boone seem to have gotten along fairly well, and he had no issues with Boone's ability to perform her primary job functions. (Doc. 39 at 25). Foxworth, however, did note issues with the frequency of Boone's requests for leave and sick days, and the manner in which she requested time off in December 2017. (Docs. 36-2, Ex. 54; 39 at 43–44). On one occasion, Foxworth went to speak to Boone at a Publix store where she was supposed to be according to her calendar. (Docs. 35, ¶ 92; 39 at 107–08). After waiting for forty-five minutes, Foxworth realized Boone was not at the location, did not intend to be at the location, and was instead at another Publix location. (*Id.*).

When Johnson returned from FMLA leave in December 2017, she met with Barth and Erin King, Publix's Director of Associate Relations, to discuss how best to approach Boone's perceived performance issues. (Docs. 35, ¶¶ 95, 96; 44-1, ¶¶ 108). Following that discussion, King e-mailed Pero, stating that Boone had not accepted responsibility for her actions and was continuing to respond poorly to Johnson's direction. Accordingly, King recommended that Boone be informed that management had lost confidence in Boone's ability to function independently as an RIS. (Doc. 35-6).

King proposed two potential options: (1) a final counseling 90-day action plan, or (2) final counseling and transfer back to a retail store management position. (*Id.*). Barth and Johnson decided that the appropriate measure was to demote Boone because she had shown "no willingness to improve and willingness to accept

the responsibility of a[n] [RIS] and [they] lost faith that she could manage that job duty on her own." (Doc. 38 at 105). On January 4, 2018, Johnson, Barth, and King advised Boone that she would be demoted, but they did not provide any specific reasons for their decision at that time. (Doc. 36 at 112). The following day, Boone took FMLA leave and would never return to the job she had held since 1999. (*Id.* at 115, 117–18).

On February 20, 2018, Boone filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 1). On March 30, 2018, her FMLA leave was converted to disability leave. (Doc. 36 at 123). On August 8, 2018, Publix informed Boone she had exhausted her disability leave and that, unless she contacted them about further opportunities, her employment would be terminated on August 22, 2018. (Docs. 36 at 134; 36-2, Ex. 63). Publix wrote, "[t]hough you are currently unable to work, we understand there may be a chance that you are able to return to work at some point in the future … It is our hope you will have a full recovery and we will see you return to work in the near future." (Doc. 36-2, Ex. 63). On August 21, 2018, Boone resigned. (*Id.*, Ex. 64).

On July 28, 2018, Boone filed an eight-count complaint in this Court seeking relief for: (1) racial discrimination under Title VII, the Florida Civil Rights Act ("FCRA") and 42 U.S.C. § 1981; (2) hostile work environment under Title VII and FCRA; and (3) retaliation under Title VII, FCRA, and § 1981. (Doc. 1).

## Analysis

Boone has brought claims for (1) discrimination, (2) retaliation, and (3) hostile work environment. Although these claims are brought under different statutory schemes, the analysis of each claim involves similar legal frameworks and tests. *See Smith v. Vestavia Hills Bd. of Educ.*, 791 F. App'x 127, 130 (11th Cir. 2019); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1389–90 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under [FCRA].").

### Discrimination (Counts I, II, & III)

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). It should be noted that Boone does not point to direct evidence of unlawful discrimination. However, "[w]hen direct evidence of unlawful discrimination is lacking, Title VII plaintiffs may instead turn to the burden-shifting framework" set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Flowers v. Troup Cty., Ga. Sch. Dist.*, 803 F.3d 1327, 1335 (11th Cir. 2015).

Under the *McDonnell Douglas* framework, the plaintiff must make out a prima facie case for racial discrimination by showing: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to perform the job; and (4) her employer treated "similarly situated" employees outside her class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213,

1220–21 (11th Cir. 2019).  Establishing a prima facie case creates an initial presumption of discrimination.  *Flowers*, 803 F.3d at 1336.  The burden then shifts to the defendant to "articulate legitimate, nondiscriminatory reasons for its actions."  *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 405 U.S. at 253).  "Once the employer advances its legitimate, nondiscriminatory reason, the plaintiff's prima facie case is rebutted and all presumptions drop from the case."  *Flowers*, 803 F.3d at 1336 (citing *Burdine*, 450 U.S. at 255).  The burden then shifts back to the plaintiff to demonstrate that the defendant's reasons were a pretext for discrimination.  *Lewis*, 918 F.3d at 1221.

Here, even assuming that Boone can establish a prima facie case for discrimination, her claim fails because Publix has presented nondiscriminatory reasons for its actions, and Boone has failed to show these reasons were pretextual.

1. Nondiscriminatory Reasons

The Eleventh Circuit has held that a defendant's burden to provide nondiscriminatory reasons for its actions is "a low bar to hurdle."  *Flowers*, 803 F.3d at 1336 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (internal quotations omitted).  The defendant "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof."  *Vargas v. Michaels Stores, Inc.*, Case. No. 8:16-cv-1949-T-33JSS, 2017 WL 2931379, at *14 (M.D. Fla. June 10, 2017) (quoting *Weston-Brown v. Bank of Am. Corp.*, 167 F. App'x 76, 80 (11th Cir. 2006)).  "[A]ll that matters is that the employer advance an explanation for its action that is not discriminatory in nature."  *Jolibois*

*v. Fla. Int'l Univ. Bd. of Tr.*, 654 F. App'x 461, 463 (11th Cir. 2016) (quoting

*Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999)) (internal quotations

omitted).

Here, Boone suffered two adverse employment actions: (1) the June 30, 2017,

ACS and (2) the January 4, 2018, demotion.[4]  In April 2017, before receiving an

ACS, Boone received a performance review.  (Doc. 36-1, Ex. 30).  In that review,

Johnson gave Boone low scores in categories that included "conflict management,"

"managing time," "meeting deadlines," and "demonstrating self-improvement."

(*Id.*).  Johnson noted that Boone was having issues with attendance, work/life

balance, appraising her own strengths and weaknesses, seeking "experiences that

provide new skills, behavior, and knowledge," and being "open, responsive, and

positive to feedback."  (*Id.*).  In response to the review, Boone wrote:

> This is an unjust and biased reflection of my contributions over the
> past 12 months … I am certain that the intentional and strategic low
> scoring is a personal attack at the hands of my RC, [whose] intent is to
> deceive in writing and devalue my contributions.  I am consistently
> undervalued and underappreciated in my role.  There is favoritism
> shown to team members who are afraid to challenge right vs. wrong
> and unfortunately, emotions are at the height of determining the
> manner in which one is treated.  It is unfortunate that the feedback
> from my DMs were not shared, since I know first hand that the
> comments submitted were of high regard.  It is also disheartening that
> my accomplishments are suppressed to fit my RC's agenda.

(*Id.*).

---

[4] The Eleventh Circuit has declined to address whether a reprimand alone constitutes an adverse
employment action.  *See Brathwaite v. Sch. Bd. of Broward Cty., Fla.*, 763 F. App'x 856, 861 (11th
Cir. 2019).  For the purposes of this motion, the Court assumes that the ACS constitutes an adverse
employment action.

On June 30, 2017, Boone was told she would be issued an ACS as a formal counseling statement. The reasons cited for giving Boone an ACS included that she:

(1)     repeatedly failed to keep up with the administrative elements of her positions, particularly keeping her calendar current;

(2)     often neglected to follow-up on core responsibilities of her position and job-related tasks; and

(3)     responded poorly to coaching and was often defensive, argumentative, and failed to accept criticism or take direction.

(Docs. 34; 48; 48-1 at 46). The reasons cited for her demotion were largely similar, including that Boone:

(1)     was disrespectful toward Johnson and displayed an attitude of overall arrogance;

(2)     did not take responsibility for her actions;

(3)     was unresponsive to guidance, coaching, and criticism, and instead would often deflect, be defensive, complain, or fight with Johnson in a manner that was perceived as unprofessional and disrespectful;

(4)     continued to require repeated coaching by Johnson on the same issues;

(5)     had lost the confidence of management in her ability to manage the freedom and lack of direct oversight that result from taking on her role.

(Docs. 34; 35-6; 38-1). By producing these nondiscriminatory reasons for its actions, Publix has met its burden of production, and the burden shifts back to Boone to show that Publix's proffered reasons are pretextual.

## 2. Pretext

The Eleventh Circuit recently observed that "[a] reason is pretextual only if it is false and the true reason for the decision is discrimination." *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, No. 19-12094, 2020 WL 709620, at *6 (11th

Cir. Feb. 12, 2020); *Langford v. Magnolia Adv. Mat., Inc.*, 709 F. App'x 639, 641 (11th Cir. 2017) ("An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.").

Evidence of pretext must be enough to "allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable." *Callahan v. City of Jacksonville, Fla.*, No. 19-11432, 2020 WL 914923, at *3 (11th Cir. Feb. 26, 2020) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). The evidence must, therefore, be sufficient to render the employer's nondiscriminatory explanations for its actions "unworthy of credence." *Burdine*, 450 U.S. at 256 (citing *McDonnell Douglas*, 411 U.S. at 804–05). As such, pretext cannot be established through conclusory allegations of discrimination, the plaintiff's subjective belief she was discriminated against, or by merely questioning the wisdom of the employer's decision. *Perry v. Walmart Inc.*, Case No. 2:18-cv-606-FtM-29NPM, 2020 WL 1158719, at *8 (M.D. Fla. Mar. 10, 2020) (explaining that a plaintiff's "subjective belief that she was discriminated against [is] insufficient to demonstrate pretext"); *Monds v. Quitman Ga.*, 767 F. App'x 750, 756 (11th Cir. 2019) (explaining that a mayor's belief that race factored into hiring decisions was not enough for a reasonable jury to infer pretext and discrimination where "he did not testify to a single event, statement, or occurrence that informed his conclusion"); *Thomas v. Seminole Elec. Coop., Inc.*, 385 F. Supp. 3d 1246, 1257 (M.D. Fla. 2018); *Jolibois*, 654 F. App'x at 464.

Instead, the plaintiff must provide sufficient evidence to show "both that the reason was false, and that discrimination was the real reason." *Bruno v. Greene Cty. Sch.*, No. 19-10616, 2020 WL 524723, at *3 (11th Cir. Feb. 3, 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). To do so, the plaintiff "must meet the [employer's] reason head on and rebut it." *Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000)). Where the defendant provides multiple nondiscriminatory reasons for its actions, the plaintiff must rebut each reason as pretextual. *Hicks-Washington*, 2020 WL 709620, at *6.

Boone argues that Publix's explanations are "weak, implausible, inconsistent, incoherent, and [contradict] its own actions and polic[ies]." (Doc. 44). As evidence, Boone contends that the record establishes that:

(1)     Publix lied about Boone's performance issues;

(2)     Publix lied about who was involved in the decision to demote Boone; and

(3)     other similarly situated RISs had similar performance issues and were not coached as frequently, counseled, or demoted.

(*Id.*).

First, Boone claims that the record demonstrates that Publix lied about her performance issues. To support her position, Boone asserts that she always received at least "meets expectations" scores on her annual performance reviews and was proficient at her core job duty – customer service training of front-line employees at various Publix stores in the field. *See* (Doc. 44-1, ¶¶ 11, 19, 121). Publix, however, does not allege that it took actions against Boone because she had

issues with her core job duties. Rather, Publix contends that its actions were predicated on Boone's mishandling of her administrative responsibilities, her failure to correct those mistakes, and her unprofessional and argumentative attitude in response to her supervisor's attempts to coach her.

In short, Boone's pretext argument represents merely *her* subjective opinion that her abilities in one area of her job should have overridden her deficiencies elsewhere. She has not offered evidence from which a jury could conclude that Publix did not honestly believe her overall job performance was unsatisfactory based on these administrative and attitude-related concerns. *See Jackson v. Agency for Persons with Disabilities Fla.*, 608 F. App'x 740, 742 (11th Cir. 2015). An employee's subjective belief that she was proficient in areas of her job that were not used as an explanation for the employer's adverse employment action cannot establish pretext. *See, e.g., Payne v. Goodyear Tire & Rubber Co.*, 760 F. App'x 803, 809 (11th Cir. 2019) (explaining that an African American employee could not establish discrimination based on his proficiency in other areas that were not the alleged basis for the defendant's adverse employment action).

Second, Boone contends that Publix lied about who was involved in the decision to demote her. Specifically, Boone contends that Johnson's superior, David Barth, lied when he said that Sam Pero was involved in the decision to demote Boone.[5] The record indicates that in December 2017, Barth e-mailed Pero requesting permission to take further action against Boone, and that they spoke to

---

[5] During this time period Pero was employed by Publix as Director of its Lakeland Division.

each other about the decision before Boone's demotion. (Docs. 35-6; 37 at 35–38; 38-1). Pero, on the other hand, testified in his deposition that his approval was unnecessary, and he was merely informed of the decision. (*Id.*). It is not clear there is a real discrepancy between the testimony of Barth and Pero. But assuming there is, Boone has failed to explain why this discrepancy, even when viewed in the light most favorable to her, renders any of Publix's nondiscriminatory reasons "unworthy of credence." *See Burdine*, 450 U.S. at 256 (citing *McDonnell Douglas*, 411 U.S. at 804–05).

Third, Boone asserts that other RISs had similar performance issues but were not subjected to an ACS or a demotion. Publix's proffered reasons, however, go beyond Boone's performance issues themselves, and hinge more on her failure to appropriately and professionally address and correct those issues. Boone has provided no evidence to suggest that other RISs had the latter issues in addition to performance issues. For example, though the record suggests that other RISs were coached on calendaring issues, Boone has presented no evidence that those same RISs were coached as frequently, failed to make the necessary adjustments to their performance, or responded to coaching in the same manner that she did. Boone's evidence is therefore insufficient to establish pretext because it fails to actually address the reasons Publix gave for its decisions.

Even if Boone has addressed some of Publix's alleged nondiscriminatory reasons for its actions, she has failed to rebut, as required, *all* the nondiscriminatory reasons Publix has offered, and, indeed, has failed to address

Publix's chief reason: unlike the other employees in her work unit, she was unresponsive to coaching, unprofessional, and argumentative in dealings with her supervisor.

Importantly, the Court notes that it gave Boone ample opportunity to point to specific evidence of pretext. The Court not only held a hearing on the matter after this motion was fully briefed and ripe, but it also invited both parties to provide supplemental filings specifically on the issue of pretext. Publix made a supplemental filing on the pretext issue, but Boone did not take advantage of the opportunity.

In sum, even if Boone could establish a prima facie case for discrimination, Publix is entitled to summary judgment on Boone's racial discrimination claims in Counts I, II, and III because Publix has produced nondiscriminatory reasons for its actions, and Boone has not provided sufficient evidence to establish that these reasons were pretextual.

### Retaliation (Counts VI, VII, & VIII)

Retaliation claims are reviewed under the same *McDonnell Douglas* burden-shifting framework discussed above. *See Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Ceus v. City of Tampa*, No. 18-10484, 2020 WL 525559, at *6 (11th Cir. Feb. 3, 2020). The only difference in the analyses is that the prima facie case for retaliation requires the plaintiff to establish: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and

(3) there was some causal connection between the two events. *Johnson*, 948 F.3d at 1325.

Boone engaged in statutorily protected activity when she: (1) accused Johnson of racially discriminatory behavior during her April 2017 performance review, and (2) filed her internal racial discrimination and retaliation claim on July 24, 2017. Boone suffered adverse employment actions when she was: (1) given her ACS on June 30, 2017, and (2) demoted on January 4, 2018.[6] Boone's retaliation claim, however, cannot survive summary judgment because, although she engaged in statutorily protected activities and suffered adverse employment actions, she has failed to establish any causal connection between those events.

To establish causation, a plaintiff must be able to show "but-for" causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The Eleventh Circuit has held that when a plaintiff relies on mere temporal proximity to establish causation, the proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *see, e.g.*, *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229–30 (11th Cir. 2011) (holding that a two-month gap is not "very close").

---

[6] Again, the Court notes that it is unclear whether the ACS – a reprimand – constitutes an adverse employment action. *See Brathwaite*, 763 F. App'x at 861. However, the Court assumes for purposes of this motion that it does. On the other hand, the Court rejects Boone's argument that Publix's September 2017 report in response to her internal claim constitutes an adverse employment action. *See* (Doc. 44). Boone herself initiated the process that led to the report, and the report is not a materially adverse employment action simply because Boone disagrees with its findings. Further, there is no evidence in the record that the report was developed with malice or used adversely against Boone in any way after it was completed. *See McQueen v. Ala. Dep't of Transp.*, 769 F. App'x 816, 823–24 (11th Cir. 2019) ("An adverse employment action … is one that harmed the plaintiff and might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006))).

In this case, Boone has presented no substantive evidence of causation beyond alleged temporal proximity. Boone received her ACS on June 30, 2017, over two months after she accused Johnson of discrimination. Moreover, Boone was demoted on January 4, 2018, over five months after she filed her internal claim. The gap in time for both the ACS and the demotion is too great to allow temporal proximity alone to carry Boone's claim. Consequently, Boone's retaliation claim cannot survive summary judgment.

Further, the Court notes that even if Boone could establish a prima facie case for retaliation, the Court's prior analysis of her failure to establish pretext would still eliminate her claim as a matter of law. As such, Publix is entitled to summary judgment on Counts VI, VII, and VIII of Boone's complaint.

### Hostile Work Environment (Counts IV & V)

To state a hostile work environment claim under Title VII and FCRA, a plaintiff must establish that: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected group; (4) the harassment was sufficiently severe and pervasive to alter the terms of her employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of direct or vicarious liability. *Jones v. Spherion Atlantic Enterp., LLC*, 493 F. App'x 6, 9 (11th Cir. 2012). Here, Boone cannot establish a prima facie case for her hostile work environment claim because she has

presented no evidence to show that the alleged harassment she faced was based on her membership in a protected group.

"Title VII is not a civility code." *Trask v. Sec., Dep't of Vet. Aff.*, 822 F.3d 1179, 1195 (11th Cir. 2016), *abrogated on other grounds by Babb v. Wilkie*, No. 18-882, – S.Ct. –, 2020 WL 1668281 (U.S. Apr. 6, 2020) (quoting *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 n.3 (11th Cir. 2010)). Rather, Title VII prohibits harassing behavior only when it "discriminates based on a protected category such as race." *Reeves v. DSI Sec. Servs., Inc.*, 395 F. App'x 544, 546 (11th Cir. 2010) (quoting *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir. 2007)); *Whitehurst v. Liquid Envtl. Sols., Inc.*, 45 F. Supp. 3d 1328, 1343 (M.D. Fla. 2014) ("The touchstone of a hostile work environment claim is the presence of … harassment based on a protected characteristic."). "[O]nly conduct that is 'based on' a protected category, such as race, may be considered in a hostile work environment analysis." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (finding that leaving bananas on a black man's truck was sufficiently based on race). A failure to show that the harassment is based on the employee's protected status is "fatal" to a plaintiff's claim. *See Trask*, 822 F.3d at 1196; *Belton v. U.S. Dep't of Agric.*, Case No. 6:17-cv-989-Orl-40TBS, 2019 WL 1130008, at *6 (M.D. Fla. Mar. 12, 2009) (explaining that a plaintiff's conflicts and confrontations with her employer "add no support to her hostile work environment claim" where they are "not based on a protected category").

Boone has presented no evidence that the problems that may have existed in her workplace were in any way related to race. On the contrary, the record reflects that Johnson was a micromanager and many of her Caucasian subordinate employees had difficulty working under her. (Docs. 44-1, ¶ 14; 45, ¶ 14). One RIS, a Caucasian female, drafted a letter on behalf of the other employees detailing the issues they had with Johnson; another RIS, a Caucasian male, was "run off" the team as a result of Johnson's management. (Docs. 35, ¶ 74; 36-2, Ex. 65; 48 at 16, 20). Even more importantly, none of the alleged behavior identified by Boone was racially charged in any way, and thus cannot be used as a basis for a hostile work environment claim. Faced with this absence of evidence, the Court grants summary judgment for Publix on Counts IV and V.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendant's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law" (Doc. 34) is hereby **GRANTED**.

2. The Clerk is directed to enter judgment in favor of Defendant Publix Super Markets, Inc, and against Plaintiff Crystal D. Boone, on all counts of the complaint.

3. The Clerk is directed to terminate any pending motions and deadlines and thereafter **CLOSE THIS CASE**.

      **DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of April, 2020.

_____

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**